UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JOHNSON,

       Petitioner,                                 Hon. Paul L. Maloney

v.                                                    Case No. 5:06-CV-101

WILLIE SMITH,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on Johnson's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Johnson's petition be **denied**.

## BACKGROUND

       As a result of events which occurred November 5, 2002, Petitioner was charged with armed robbery, possession of a firearm during the commission of a felony, and being a felon in possession of a firearm. Several individuals testified at Petitioner's bench trial. The relevant portions of their testimony are summarized below.

**Sabrina Minion**

In the early morning hours of November 5, 2002, Minion drove to her sister's house, located at 3826 Carpenter, to pick up her daughter. (Trial Transcript, September 25, 2003, 8-9). At approximately 12:05 a.m. that morning, Minion parked her vehicle in a "side alley" near her sister's house. (Tr. 8-9). The area in which Minion parked her vehicle was illuminated by two street lights. (Tr. 9). As soon as Minion parked and turned off the engine, two men approached her vehicle. (Tr. 9-12). One man approached the driver's door while the other man walked to the passenger side of the vehicle. (Tr. 12-13). The man who approached the driver's side of the vehicle was carrying a gun. (Tr. 13).

Upon reaching the driver's door, the man with the gun said, "open the door." (Tr. 13). Minion opened her car door, at which point the man placed the gun against Minion's head and said, "give me some money." (Tr. 13-15). Minion looked at the man and responded, "I don't have any money." (Tr. 15). When she looked at the man, Minion was able to see his "whole face." (Tr. 15). Minion testified that she experienced no difficulty seeing her assailant's face. (Tr. 17). Minion identified Petitioner as her assailant. (Tr. 9-10). Minion testified that she had no doubt about the accuracy of her identification. (Tr. 17).

Petitioner then instructed his accomplice to search Minion's bag as well as the rest of the vehicle. (Tr. 15-16). While searching the vehicle, Petitioner's accomplice took Minion's cell phone. (Tr. 17). While the other man was searching the vehicle, Petitioner again demanded that Minion give him money. (Tr. 16). Minion responded, "I don't have any money, but you could take the car." (Tr. 16-17). Petitioner then pointed his weapon at Minion's head and stared at her for a few "moments." (Tr. 18). Petitioner then put the gun in his pocket and walked to the rear of the

2

vehicle to speak with his accomplice. (Tr. 18). Petitioner and his accomplice then "started walking very slowly towards the other end of the alley." (Tr. 18-19). As soon as the men were out of sight, Minion "jumped out [of] the car and proceeded to run up to the porch of [her] sister's house." (Tr. 19). As soon as Minion entered the residence, she "passed out." (Tr. 19).

On February 5, 2003, Minion was asked by Investigator Brown to come down to the police station to "view a mug book." (Tr. 21-22). When Minion arrived at the station, Brown "brung the book out, and [Minion] proceeded to flip through the pages." (Tr. 22). Minion identified Petitioner from one of the pictures in the book. (Tr. 22).

**Matthew Wilson**

As of November 5, 2002, Wilson was employed as a police officer for the City of Detroit. (Tr. 38-39). In the early morning hours of November 5, 2002, Officer Wilson was dispatched to 3826 Carpenter to investigate an armed robbery. (Tr. 38-39). Officer Wilson spoke with Sabrina Minion, who informed him that she had been robbed. (Tr. 40). Minion informed Wilson that one of the robbers had a handgun and that they stole her cell phone. (Tr. 40).

**Steven Brown**

As of February 5, 2003, Brown was employed as an investigator with the Detroit Police Department. (Tr. 44-45). On that date, Sabrina Minion traveled to the police station to view "mug files." (Tr. 45). Minion was provided with two "mug books," each of which contained numerous photographs. (Tr. 45-46). Minion identified Petitioner as the man who had robbed her on November 5, 2002. (Tr. 45-46). Minion selected Petitioner from a page which contained the

3

photographs of six individuals. (Tr. 46). Brown testified that Minion was "very, very adamant" that Petitioner was her assailant. (Tr. 46-47). Minion was unable to identify Petitioner's accomplice, however. (Tr. 46).

**Pat Johnson**

Pat Johnson is Petitioner's mother. (Tr. 55). Johnson testified that on the night of November 4, 2002, Petitioner was at her residence from approximately 10:30 p.m. until the following morning. (Tr. 55-58).

**Michael Johnson**

Petitioner testified that on the night of November 4, 2002, he returned to his mother's house between 10:00 p.m. and 11:00 p.m. (Tr. 64). Petitioner testified that he did not leave the house until the following morning. (Tr. 65-66). Petitioner denied robbing or pointing a gun at Sabrina Minion. (Tr. 67-68).

Following the presentation of evidence, the trial judge found Petitioner guilty of armed robbery, possession of a firearm during the commission of a felony, and being a felon in possession of a firearm. (Tr. 72). Petitioner was sentenced to serve 8-20 years in prison on the armed robbery conviction and 2-4 years on the felon in possession of a firearm conviction. (Sentence Transcript, October 27, 2003, 8). Petitioner also received a consecutive sentence of two years for the possession of a firearm during the commission of a felony conviction. (Tr. 8). Petitioner later submitted in the Michigan Court of Appeals a delayed application for leave to appeal, asserting the following claims:

> I. The district court and circuit court erred in failing to dismiss the charges against Defendant when the preliminary examination was not held within 14 days of the arraignment and good cause was not shown.
>
> II. Defendant was denied the effective assistance of counsel when the court granted an evidentiary hearing on the issue of identification, but trial counsel did not demand the evidentiary hearing prior to trial and never raised the issue at trial.
>
> III. Defendant's conviction must be reversed where the police department and the prosecution denied Defendant his state and federal constitutional right to due process and to a fair trial by failing to fully investigate the charges, relegating Defendant's trial to a credibility contest where the evidence was less than overwhelming.
>
> IV. Was there insufficient evidence at trial to support the trial court's verdict of armed robbery, felon in possession of a firearm, and felony firearm where the only evidence was an unduly suggestive identification.

The Michigan Court of Appeals denied Petitioner's request for "lack of merit on the grounds presented." *People v. Johnson,* No. 257864, Order (Mich. Ct. App., Feb. 10, 2005). Raising the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Johnson*, No. 128252, Order (Mich., Aug. 30, 2005). On June 23, 2006, Petitioner initiated the present action, asserting issues II, III, and IV identified above.

**STANDARD OF REVIEW**

Johnson's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause

of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

7

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

As noted above, the Michigan courts did not address any of the claims asserted by Johnson in his petition for writ of habeas corpus. The deferential standard articulated by the AEDPA does not apply if the state has failed altogether to review a particular claim. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts a *de novo* review. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

I.      **Ineffective Assistance of Counsel**

As indicated above, Sabrina Minion identified Petitioner as her assailant after viewing photographs in a mug book. Petitioner claims that the process by which Minion identified him was "unnecessarily suggestive." Petitioner asserts that his trial counsel was ineffective for failing to seek to exclude or otherwise challenge testimony regarding Minion's initial identification of Petitioner.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, Petitioner must demonstrate that his attorney's actions were unreasonable under prevailing professional norms. *Id.* at 688. In assessing such a claim, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

With respect to Petitioner's claim that his trial counsel should have sought to exclude evidence concerning Minion's initial identification of Petitioner, even if the Court assumes that counsel's performance was deficient, Petitioner cannot establish prejudice resulting therefrom.

The due process clause protects criminal defendants from being convicted on the basis of "evidence derived from a suggestive identification procedure" that was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) and citing *Neil v.*

9

*Biggers*, 409 U.S. 188, 197 (1972)). It is the likelihood of misidentification that violates a criminal defendant's due process rights. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (citing *Biggers*, 409 U.S. at 198). Accordingly, absent "a very substantial likelihood of irreparable misidentification," identification evidence "is for the jury to weigh." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

The Supreme Court has long recognized that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." *Simmons v. United States*, 390 U.S. 377, 383 (1968). Despite "the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement." *Id.* at 384. The Court concluded, therefore, that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.*, *see also*, *Tipton v. Carlton*, 2008 WL 5397785 at *4 (6th Cir., Dec. 29, 2008) (same).

To determine whether a photographic identification procedure was impermissibly suggestive, a court employs a two-step analysis. *Ledbetter*, 35 F.3d at 1070-71; *Haliym*, 492 F.3d at 704. The court must first determine whether the identification procedure in question was unduly suggestive. *Ledbetter*, 35 F.3d at 1070-71; *Haliym*, 492 F.3d at 704. Determining whether an identification procedure is unnecessarily suggestive "depends upon whether the witness's attention was directed to a suspect because of police conduct." *Howard*, 405 F.3d at 470.

If the identification procedure is found to be unnecessarily suggestive, the court must determine "whether, under all the circumstances, that suggestive procedure gave rise to a substantial

likelihood of irreparable misidentification." *Id.* (quoting *Manson*, 432 U.S. at 107); *see also*, *Ledbetter*, 35 F.3d at 1071; *Haliym*, 492 F.3d at 704. When considering whether a suggestive identification is nonetheless reliable, the Court must consider the following factors: (1) the witness' opportunity to view the suspect; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the time between the crime and the identification. *Haliym*, 492 F.3d at 704 (citing *Manson*, 432 U.S. at 114 and *Neil*, 409 U.S. at 199-200).

Petitioner has neither identified nor presented evidence from which a reasonable person could conclude that the process by which Sabrina Minion initially identified Petitioner was unnecessarily suggestive. Sabrina Minion and Steven Brown both testified that when Minion arrived at the police station on February 5, 2003, she was provided with numerous mug shots to view. Minion selected Petitioner from a page which contained the photographs of six individuals. There is no evidence that Brown (or anybody else) engaged in any behavior that in any way directed Minion to identify Petitioner. There is no evidence that the photograph of Petitioner, which Minion identified, was in any way different or distinct from the other photographs Minion observed as to have directed Minion to identify Petitioner. There is also no evidence that the photographs Minion observed were arranged in a way as to direct her to identify Petitioner. In sum, Petitioner has failed to establish that the photographic identification procedure in question was impermissibly suggestive.

Moreover, even if the Court assumes that the identification procedure in question was unnecessarily suggestive, the totality of circumstances does not support the argument that Minion's identification of Petitioner was unreliable. Sabrina Minion testified that she was able to clearly observe her assailant's "whole face." While Minion was able to view Petitioner's face for only a

11

brief period of time, she was able to clearly view his face from very close range. With respect to the second factor, the reliability of an identification is increased where the witness "was able to view the assailant with a heightened degree of attention, as compared with disinterested bystanders or casual observers." *Haliym*, 492 F.3d at 705. Minion was certainly not a disinterested bystander or casual observer, but was instead directed at gunpoint (at point-blank range) to surrender her money.

The third factor does not appear to be relevant because there is no evidence that Minion provided police with a description of her assailant prior to February 5, 2003, or had previously participated in any type of identification procedure. As for the level of certainty Minion exhibited regarding her identification, Steven Brown testified that when Minion identified Petitioner's photograph, she was "very, very adamant" that Petitioner was her assailant. Finally, while Petitioner finds significant that three months passed between the robbery and her identification of his photograph, the Sixth Circuit has observed otherwise. *See Howard*, 405 F.3d at 473-74 (observing that "three months is not a great length of time between an observation and identification"). Petitioner cannot demonstrate that there existed any legitimate basis to exclude Sabrina Minion's identification testimony. Thus, Petitioner cannot establish that his trial counsel was ineffective for failing to seek the exclusion of such testimony.

Finally, to the extent that Petitioner asserts that his attorney failed to otherwise challenge Sabrina Minion's identification testimony at trial, the Court finds such claim to likewise be without merit. As the trial transcript reveals, Petitioner's counsel vigorously and ably cross-examined Minion on this matter. That the trial judge nevertheless found Minion more credible than Petitioner does not diminish the effectiveness of counsel's performance in this regard.

In sum, for the reasons discussed herein, the Court finds Petitioner's ineffective assistance of counsel claim to be without merit.

## II.     Due Process

Petitioner asserts that his due process rights were violated due to "a complete lack of adequate investigation prior to the charges being instituted against him." Petitioner also asserts that "the prosecutor has a settled obligation to fully investigate the facts and bring forth all relevant evidence pertaining to the whole transaction."

To the extent that Petitioner challenges the decision by the prosecutor to charge him in this matter, Petitioner's claim fails. The Supreme Court has long recognized that "the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citations omitted). Accordingly, "[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* (citation omitted). However, while prosecutorial discretion is "broad," it is not "unfettered" and is "subject to constitutional restraints." *Id.* at 608. Specifically, the decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," including "the exercise of protected statutory and constitutional rights." *Id.* (citations omitted).

A review of the preliminary examination transcript reveals that probable cause existed to charge Petitioner in this matter. (Dkt. #25). This conclusion is supported by the fact that the trial judge, as finder of fact, found beyond a reasonable doubt that Petitioner was guilty of the crimes with

13

which he was charged. *See, e.g., Grayer v. McKee*, 149 Fed. Appx. 435, 443 (6th Cir., Sept. 9, 2005). Petitioner has not alleged that the decision to prosecute in this matter was based on "unjustifiable" factors or in retaliation for the exercise of protected rights. The Court notes that the record contains no evidence to support any such argument. Accordingly, this particular claim is without merit.

To the extent that Petitioner is asserting a claim that the prosecutor unlawfully failed to produce evidence favorable to Petitioner, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the Court finds that such claim is likewise without merit.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Wilson v. Mitchell*, 498 F.3d 491, 512 (6th Cir. 2007) (quoting *Brady*, 373 U.S. at 87). The material which must be disclosed under *Brady* "encompasses impeachment evidence as well as exculpatory evidence." *Wilson*, 498 F.3d at 512 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). To establish a *Brady* violation, Petitioner must establish: (1) the prosecution suppressed or withheld evidence, (2) such evidence was favorable to the defense, and (3) the suppressed evidence was material. *See Bushard v. Yukins*, 2004 WL 74659 at *1 (6th Cir., Jan. 7, 2004) (quoting *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000)). Petitioner has not alleged that the prosecutor suppressed or withheld evidence and, again, the record supports no such argument. Thus, this particular claim is without merit.

**III.        Insufficiency of the Evidence**

Petitioner asserts that he is entitled to habeas relief because the prosecution did not present sufficient evidence to support his conviction for armed robbery. Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the fact finder. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Pursuant to Michigan law then in effect, an individual was guilty of armed robbery if the following elements were satisfied: (1) an assault; (2) a felonious taking of property from the victim's presence or person; (3) while the defendant is armed with a weapon described in the statute. *See People v. Rodgers*, 645 N.W.2d 294, 298 (Mich. Ct. App. 2001). It does not matter whether the victim "actually owned the property taken," as the prosecution need only establish that the property was taken from the victim's presence and that "the victim's right to possess the property was superior to the defendant's right to possess it." *Id.*

To convict an individual as an aider and abetter the following elements must be established: (1) the underlying crime was committed by either the defendant or some other person, (2) the defendant performed acts or gave encouragement which aided and assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid or encouragement. *See People v. Bates*, 2000 WL 33421465 at *1 (Mich. Ct. App., April 28, 2000) (citing *People v. Turner*, 540 N.W.2d 728 (Mich. Ct. App. 1995)).

Petitioner asserts that he is entitled to relief because the only evidence against him was the testimony of Sabrina Minion, who was not worthy of belief. As noted above, in assessing Petitioner's claim, the Court is not permitted to judge the credibility of the witnesses. Petitioner had the opportunity to cross-examine Minion regarding the events in question, including her subsequent identification of Petitioner as her assailant. The trial judge obviously found Minion credible and Petitioner and his mother not credible. As previously stated, the Court is not permitted to re-weigh the evidence or substitute its judgment for that of the trial judge. Instead, the question is whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to permit a rational person to find Petitioner guilty beyond a reasonable doubt. Sabrina Minion's testimony, assessed according to this standard, establishes the necessary elements of armed robbery identified above. Petitioner's conviction for armed robbery, therefore, is supported by constitutionally sufficient evidence. Accordingly, this claim raises no issue upon which relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Johnson's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 7, 2009

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge